UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RACHAEL MICHELLE POST, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:23 CV 1701 RWS ) |
| LELAND DUDEK[1], Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

# MEMORANDUM AND ORDER

Plaintiff Rachael Michelle Post brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. For the reasons discussed below, the Commissioner's decision will be affirmed.

## Background

Post protectively filed a Title II application for disability insurance benefits on April 20, 2017, alleging that she became disabled on June 3, 2016. Tr. 47–49. Post alleged that her disability was due to brachial plexus, diabetes, and asthma. Tr. 143.

---

[1] Leland Dudek became the Commissioner of Social Security on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for Martin O'Malley as the defendant in this suit.

Post's application was denied at the initial claims level. Tr. 62–66. Post then filed a request for a hearing before an administrative law judge ("ALJ"), Tr. 67–68, which was held on December 7, 2018. Tr. 29–46. On March 27, 2019, the ALJ issued an unfavorable decision finding that Post had the severe impairments of diabetes mellitus, asthma, bilateral carpal tunnel syndrome, bilateral thoracic outlet syndrome, and migraines, but that she did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14–23. As a result, the ALJ concluded that Post was not disabled within the meaning of the Social Security Act at any time from the alleged onset date though the date of decision. Tr. 209.

On December 26, 2019, the Appeals Council denied Post's request for review, Tr. 1–4, and the ALJ's decision became the final decision of the Commissioner. *See* 42 U.S.C. § 405(g). On February 26, 2020, Post appealed to the United States District Court. Tr. 1255–64. On September 24, 2021, the district court remanded Post's initial application for further proceedings and new hearing to determine to reevaluate Post's residual functional capacity ("RFC") and daily activites, as well as the medical opinion of Post's doctor and the prior administrative medical findings of the State agency medical consultant. Tr. 1265–81.

On August 23, 2022, Post amended her claim to a "closed period" claim, stating that her disability began on June 3, 2016 and concluded on August 5, 2021.

2

Tr. 1389–90.  After the new hearing, the ALJ issued a second unfavorable decision on December 27, 2022.  Tr. 1172–84.  The ALJ found that Post had the severe impairments of bilateral thoracic outlet syndrome, peripheral neuropathy with bilateral carpal tunnel syndrome, diabetes mellitus, obesity, asthma, and migraines, but that she did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 1175–76.  As a result, the ALJ concluded that Post was not disabled within the meaning of the Social Security Act from June 3, 2016 through the date of the decision.  Tr. 1184.  The Appeals Council denied Post's exceptions on November 8, 2023, Tr. 1156–62, and the ALJ's decision became the final decision of the Commissioner.  *See* 42 U.S.C. § 405(g).

Post filed this action on December 20, 2023, seeking judicial review of the Commissioner's final decision.  Posts argues that the Commissioner's decision should be reversed because the ALJ did not properly determine Post's RFC, properly evaluate the prior administrative medical findings, or comply with this Court's remand order.

### **Legal Standard**

To be eligible for disability benefits under the Social Security Act, a claimant must prove that she is disabled.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  The Act defines disability as the "inability to engage in any substantial

3

gainful activity" due to a "medically determinable physical or mental impairment" that can be expected to result in death or which has lasted or can be expected to last for at least twelve continuous months. 42 U.S.C. § 423(d)(1)(A). A claimant will be declared disabled only if her impairment or combination of impairments is of such severity that she is unable to engage in her previous work and—considering her age, education, and work experience—she is unable to engage in any other kind of substantial gainful work in the national economy. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner engages in a five-step evaluation process: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work; and (5) whether the claimant has the RFC to perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520. The burden of proof rests with a claimant through the first four steps but shifts to the Commissioner at step five. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009).

When reviewing a denial of disability benefits, my role is limited to determining whether the Commissioner's decision complies with the relevant legal

4

requirements and is supported by substantial evidence in the record as a whole. *Id.* Substantial evidence refers to less than a preponderance but enough for a reasonable person to find it adequate to support the Commissioner's decision. *Id.* I must affirm the Commissioner's decision if, "after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## **ALJ Decision**

The ALJ denied Post disability benefits after finding that she was not disabled within the meaning of the Social Security Act at any time from the date of her alleged onset of disability of June 3, 2016 through December 27, 2022, the date of the decison. Tr. 1184. At step one, the ALJ found that Post had not engaged in substantial gainful activity since June 3, 2016. Tr. 1174–75. At step two, the ALJ found that Post had the following severe impairments: bilateral thoracic outlet syndrome, peripheral neuropathy with bilateral carpal tunnel syndrome, diabetes mellitus, obesity, asthma, and migraines. Tr. 1175. At step three, the ALJ found that Post did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 1175–76. At step four, the ALJ found that Post had the

5

RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), with several limitations. Tr. 1176–82. Based on RFC, the ALJ found that Post was unable to perform her past relevant work, but that she could perform a significant number of jobs existing in the national economy. Tr. 1182–83. As a result, the ALJ concluded that Post was not under a disability at any point during the relevant period. Tr. 1184.

### Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Post's recitation of facts, ECF No. 15-1, to the extent they are admitted by the Commissioner, ECF No. 19-1. Additional facts will be discussed as necessary to address the parties' arguments.

### Discussion

Post argues that the Commissioner's decision should be reversed because the ALJ did not properly determine Post's RFC. In particular, Post claims that the ALJ's RFC determination is not supportable because the ALJ did not properly evaluate her daily activities or the medical opinion evidence and prior administrative medical findings.

A claimant's RFC is the most the claimant can do despite their limitations, and an ALJ must assess it based on all relevant evidence in the claimant's case record. 20 C.F.R. § 404.1545(a)(1). Relevant evidence includes "'medical records, observations of treating physicians and others, and an individual's own description

6

of his limitations.'" *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013)).  Because a claimant's RFC is a medical question, an ALJ's RFC determination "'must be supported by some medical evidence of the claimant's ability to function in the workplace.'" *Id.* (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)).

In this case, the ALJ found that Post had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), but with several limitations.  Tr. 1176–82.  The ALJ assessed the following limitations:

> [T]he claimant must avoid climbing ladders, ropes, or scaffolds.  She can occasionally crawl, frequently reach in all directions with the bilateral upper extremities, and frequently handle and finger with the bilateral upper extremities.  The claimant must avoid hazards such as unprotected heights and working with dangerous machinery.  She must avoid concentrated exposure to odors, fumes, gases, dusts, and poor ventilation.

Tr. 1176.  Post argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ should have given greater weight to the opinion of Post's treating physician and less weight to the opinion of the State agency medical consultant.

I find that the ALJ's RFC determination is supported by substantial evidence. In this case, the ALJ determined that Post's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects" of her

7

symptoms were not "entirely consistent with the medical evidence and other evidence in the record." Tr. 1177.

For instance, the ALJ considered inconsistencies between Post's subjective complaints and her reported daily activities. Tr. 1177–78. In particular, the ALJ noted that Post's function report acknowledged the ability to perform personal care tasks (albeit with trouble lifting her left arm), drive, do dishes, shop for grcoeries once per month, and do some laundry. Tr. 1177. She also was able to help clean out her nephew's apartment, throw a nerf football with her son with only a little pain, care for her terminally ill brother alongside home and school duties, care for her deceased brother's estate, walk her dog, and go to the pool. *Id.* These daily activities undercut Post's reported limitations. *See Swarthout v. Kijakazi*, 35 F.4th 608, 612 (8th Cir. 2022) (finding that "caring for personal hygiene, managing medications, preparing simple meals, streatching and performing gentle exercising, watching television, reading the newspaper, going for short walks outside . . . doing some laundry, and doing some household chores in short increments" supported the ALJ's decision); *Ross v. O'Malley*, 92 F.4th 775, 780 (8th Cir. 2024) (finding that the ability to drive short distances and shop in stores once a month supported the ALJ's decision).

Post argues that the ALJ mischaracterized her activities in contravention to the remand order. However, Post reported such activities to her providers and the

8

ALJ considered any difficulties Post had in performing those activities. As a result, the ALJ's determination that Post's reported daily activities suggested she could perform a range of sedentary work is supported by substantial evidence. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge [subjective complaints] and resolve conflicts in evidence.").

The ALJ also considered the objective medical evidence supporting Post's subjective complaints. Tr. 1177–82; *see also* 20 C.F.R. § 404.1529(c)(2) (stating objective medical evidence is useful in making reasonable conclusions about the intensity and persistence of a claimant's symptoms); *Halverson v. Astrue*, 600 F.3d 922, 931–32 (8th Cir. 2010) (stating an ALJ may not discount a claimant's subjective complaints "solely because they are unsupported by objective medical evidence" but may consider "the absence of objective medical evidence to support the complaints").

In this case, the ALJ reviewed treatment notes from physician appointments and physical therapy sessions. The ALJ noted that in August 2016, Post's sensation was "dramatically improved" and her range of motion was "excellent." Tr. 321, 1178. In October 2016, Post was in no acute distress and "doing well." Tr. 277. 1178. In December 2016, Post displayed grip strength of 50 pounds on the right and 37 pounds on the left, with right lateral pinch strength of 14 pounds on the right and

9

10 pounds on the left.  Tr. 377, 1178.  In February 2017, Post could only elevate her arms for 17 seconds, and had arm tenderness and positive Tinel's testing at the right elbow, but she had negative Tinel's testing elsewhere, no swelling or atrophy in her hands, and equal/normal arm strength and hand grip strength. Tr. 344, 1178.

In March 2017, after thoracic outlet surgery, Post had adequate range of motion, intact sensation, and stable strength.  Tr. 289, 1178.  In April 2017, Post displayed active left shoulder flexion to 140 degrees, and average hand grip strength of 46 pounds on the right and 33.7 pounds on the left.  Tr. 654–55, 1178.  In July 2017, Post displayed active flexion of the shoulder to 148 degrees, and average hand grip strength of 39.7 pounds on the right and 38 pounds on the left.  Tr. 553–54, 1179.  In September 2017, Plaintiff had some tenderness in her left upper arm, but full range of motion and normal handgrip strength.  Tr. 772, 1179.  Despite complaints of tenderness, Post continued to show full range of upper extremity motion and normal and equal handgrip strength at examinations in December 2017, March 2018, April 2018, January 2019, September 2019, February 2020, June 2020, February 2021, and August 2021.  Tr. 819, 821, 861, 858, 969, 1154, 1433, 1442, 144–47, 1449–50, 1469, 1479, 1179.

In determining Post's RFC, the ALJ related Post's work limitations to the medical evidence and her reported symptoms.  Tr. 1177–82.  The ALJ found that Post could perform sedentary work consistent with the objective medical findings.

10

Tr. 1179–82.  In addition, the ALJ included additional reaching limitations.  Tr. 1179–82.

Post argues that the ALJ's conclusions as to her RFC is not supported by substantial evidence because the ALJ provided insufficient weight to the opinions of Post's treating physician, Robert Thompson, M.D., and too much weight to the opinions of the State agency medical consultant, John Marshall Jung, M.D.

I find that the ALJ properly evaluated the medical opinion evidence.  In this case, Dr. Thompson opined that Post could only lift, push, and pull five pounds, could not perform sustained overhead activities, and could not perform prolonged repetitive activities with both arms.  Tr. 845, 1427, 1438.  However, the ALJ found Dr. Thompson's opinions unpersuasive as they were not supported by his own treatment notes, which showed normal handgrip strength and full upper extremity motion, including overhead reaching.  Tr. 1180, 1433, 1442, 1446–47, 1449–50, 1469, 1479.  Additionally, Dr. Thompson did not explain why additional restrictions were warranted despite normal examination findings and his treatment history had months-long gaps.  Tr. 1180.

Dr. Jung opined that Post was capable of sedentary work without reaching restrictions.  Tr. 51–53.  The ALJ found Dr. Jung's opinions persuasive because of his program knowledge and expertise in disability evaluation.  Tr. 1180.  The ALJ also determined that his opinion was supported by the evidence in the record,

including Post's surgeries with no complications, her projected benefit from physical therapy, her examination findings, and her daily activities.  Tr. 52–53, 166, 578, 959, 1180, 1528, 1587, 1636.

In light of these considerations and supporting facts, I find that the ALJ did properly evaluated the medical opinion evidence and properly determined Post's RFC.  The ALJ discussed the relationship between the opinions and the record in detail, he identified good reasons for the weight given to each doctor's opinion, and his determination is supported by substantial evidence in the record as a whole.  I will therefore defer to the ALJ's determination.  *See Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted) (explaining that "the interpretation of physicians' findings is a factual matter left to the ALJ's authority"); *see also Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022) ("Despite [the claimant's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence.").

I also find that the ALJ complied with the remand order.  The ALJ discussed Post's daily activities, as well as the opinions of Dr. Thompson and Dr. Jung, in greater detail than his previous decision.  In addition, the ALJ reviewed the record as a whole and included limitations that Dr. Jung did not recommend.  As a result, the ALJ complied with the order to reevaluate Post's RFC, daily activities, and medical opinion evidence.

12

## Conclusion

While Post may believe that the evidence in her case record should have been assessed differently, it is not my role to reweigh evidence considered by an ALJ. *See Hensley*, 829 F.3d at 934. The ALJ's decision demonstrates that she evaluated all the medical and other evidence in Post's case record and adequately explained her reasons for the weight given to the evidence. Because the ALJ's decision complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner will be **AFFIRMED**, and the complaint of Plaintiff Rachael Michelle Post will be **DISMISSED** with prejudice.

A separate Judgment in accordance with this Memorandum and Order will be entered on this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March 2025.